IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| JESSIE COBBINS and ROBERT COBBINS, | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) Case No. 15-0031-CV-W-ODS ) |
| J.E. DUNN CONSTRUCTION CO., et al. | ) ) |
| Defendants. | ) ) |

<u>ORDER AND OPINION (1) GRANTING CIMMARON ELECTRIC, INC.'S MOTION FOR SUMMARY JUDGMENT, (2) GRANTING J.E. DUNN CONSTRUCTION COMPANY'S MOTION FOR SUMMARY JUDGMENT, (3) GRANTING IN PART AND DENYING IN PART SKYLINE DESIGN, INC.'S MOTION FOR SUMMARY JUDGMENT, (4) DISMISSING ROBERT COBBINS'S LOSS OF CONSORTIUM CLAIM AGAINST SKYLINE DESIGN, INC., AND (5) GRANTING THE BRATTON CORPORATION'S MOTION FOR SUMMARY JUDGMENT</u>

Pending are separate motions for summary judgment filed by Defendants Cimmaron Electric, Inc. (Doc. #94), J.E. Dunn Construction Company (Doc. #96), Skyline Design, Inc. (Doc. #98), and The Bratton Corporation (Doc. #100).

## I. BACKGROUND

This matter stems from an incident that occurred in April 2013, where a tempered glass door shattered and injured Jessie Cobbins. Doc. #29. Jessie Cobbins and her husband, Robert Cobbins, filed a lawsuit against J.E. Dunn Construction Company ("J.E. Dunn"), Insulite Glass Company ("Insulite"), The Bratton Corporation ("Bratton"), and Cimmaron Electric Inc. ("Cimmaron Electric") in the Circuit Court of Jackson County, Missouri. Doc. #1-2. The matter was removed to this Court. Doc. #1. Plaintiffs later sought and obtained leave to amend their Petition, adding Skyline Design, Inc. ("Skyline") as a defendant. Docs. #27-29. Jessie Cobbins alleges claims of beach of implied warranty of merchantability (Count I), breach of implied warranty of fitness for a particular purpose (Count II), product liability (Count III), and negligence (Count IV). Robert Cobbins brings a claim of loss of consortium (Count V).

Cimmaron Electric, J.E. Dunn, Skyline, and Bratton filed motions for summary judgment. Docs. #94, 96, 98, 100.[1] Plaintiffs failed to timely respond to the motions. On September 26, 2016, the Court issued an order directing Plaintiffs to show cause as to why Defendants' motions should not be granted. Doc. #102. The Court also informed Plaintiffs that if they failed to respond to Defendants' statements of fact, those facts would be deemed admitted for purposes of summary judgment. *Id.* Plaintiffs' response was due by October 14, 2016. *Id.* To date, Plaintiffs have not submitted anything in response to the Court's Order. Accordingly, the motions for summary judgment are ripe for consideration.

## II. STANDARD

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Williams v. City of St. Louis*, 783 F.2d 114, 115 (8th Cir. 1986). "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 993 (8th Cir. 2011) (quotation omitted). In applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 588-89 (1986); *Tyler v. Harper*, 744 F.2d 653, 655 (8th Cir. 1984). However, a party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of the…pleadings, but…by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

Because Plaintiffs failed to controvert the facts set forth by Defendants in support of Defendants' summary judgment motions, the facts supported by the record are

---

[1] Insulite did not file a motion for summary judgment.

deemed admitted for the purpose of summary judgment. L.R. 56.1. When a party fails to address another party's assertion of fact in a motion for summary judgment, the Court may "grant summary judgment if the motion and supporting materials – including the facts undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

### III. DISCUSSION
#### A. J.E. Dunn

In 2005, the General Services Administration ("GSA") hired J.E. Dunn to serve as general contractor for renovating the Richard Bolling Federal Building ("Bolling Building"). Doc. #97, at 2-3; Doc. #97-1, at 1. J.E. Dunn entered into a subcontract with Bratton under which Bratton was required to obtain and install, among other things, tempered glass doors. Doc. #97, at 3; Doc. #97-2, at 1-2. During the renovations, J.E. Dunn provided construction services, but did not manufacture, fabricate, ship, or install the tempered glass doors. Doc. #97, at 3, 7-8; Doc. #97-2, at 1-2. The renovations were completed in May 2006, and were approved as substantially completed and accepted by the GSA. Doc. #97, at 3; Doc. #97-3. In April 2013, Jessie Cobbins was injured while opening a tempered glass door on the fourteenth floor of the Bolling Building. Doc. #97, at 3; Doc. #97-4. According to her, the door "spontaneously shattered," and glass fell on her right hand and left foot, resulting in permanent injuries. Doc. #29, ¶¶ 11-12.

During discovery, J.E. Dunn served interrogatories on Plaintiffs. Docs. #77-78; Doc. #97, at 6; Doc. #97-9; Doc. #97-10. J.E. Dunn asked Plaintiffs to provide the factual basis for their claims that J.E. Dunn installed the door, fabricated the door, manufactured the door, sold the door, was a merchant with respect to the door, and was notified the door was not fit for its intended purpose. Doc. #97, at 7; Doc. #97-9; Doc. #97-10. J.E. Dunn's interrogatories also asked Plaintiffs to identify any warning they believed J.E. Dunn should have provided; any fabrication, manufacturing, or installation defect they believe caused the door to be defective; how they believe the door was defective; and the steps they believe J.E. Dunn should have taken to further stabilize, strengthen, or modify the door. Doc. #97, at 7; Doc. #97-9; Doc. #97-10. Plaintiffs never answered these interrogatories. Doc. #97, at 6.

3

J.E. Dunn also served requests for admissions on Plaintiffs. Docs. #77-78; Doc. #97, at 6-10; Doc. #97-11; Doc. #97-12. But Plaintiffs never answered those requests. Doc. #97, at 6. Pursuant to the Federal Rules of Civil Procedure, "[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." Fed. R. Civ. P. 36(a)(3). Because Plaintiffs failed to answer these requests for admission, these matters are admitted.

By failing to answer the requests for admission, Plaintiffs admitted they had no factual basis for the allegations that J.E. Dunn installed, fabricated, manufactured, or sold the door. Doc. #97-11, at 1-2; Doc. #97-12, at 1-2. Plaintiffs admitted they did not provide notice to J.E. Dunn of their belief the door was not fit for its intended purpose. Doc. #97-11, at 2; Doc. #97-12, at 2. Plaintiffs admitted they did not know the specific warning J.E. Dunn was required to provide. Doc. #97-11, at 3; Doc. #97-12, at 3. Plaintiffs admitted they could not identify any fabrication, manufacturing, or installation defect that caused the door to be defective. Doc. #97-11, at 3; Doc. #97-12, at 3.

Plaintiffs also admitted they could not identify the steps J.E. Dunn should have taken to further stabilize, strengthen, or modify the door. Doc. #97-11, at 3-4; Doc. #97-12, at 3-4. Plaintiffs admitted they had no factual basis for their allegations J.E. Dunn owed a duty to warn them or J.E. Dunn breached its duty to warn. Doc. #97-11, at 4-5; Doc. #97-12, at 4. Finally, Plaintiffs admitted they could not provide a factual basis for their allegations that J.E. Dunn's actions or inactions caused their injuries. Doc. #97-11, at 5; Doc. #97-12, at 5. J.E. Dunn moves for summary judgment, arguing Plaintiffs cannot establish any submissible claim against J.E. Dunn.

(1) <u>Breach of Implied Warranty of Merchantability</u>

Section 400.2-314 of the Missouri Revised Statutes creates an implied warranty of merchantability, which includes a warranty that goods sold "are fit for the ordinary purpose for which such goods are used." Mo. Rev. Stat. § 400.2-314; *see also Ragland Mills, Inc. v. Gen. Motors Corp.*, 763 S.W.2d 357, 360 (Mo. Ct. App. 1989). To recover under the provisions of section 400.2-314, a party must prove (1) a merchant sold goods, (2) which were not "merchantable" at the time of the sale, (3) injury and

4

damages to the buyer, (4) which were caused proximately or in fact by the defective nature of the goods, and (5) notice to the seller of the injury. *Ragland Mills*, 763 S.W.2d at 360 (citation omitted); *see also* Mo. Rev. Stat. § 400.2-314 (stating "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."). A merchant is defined as "a person who deals in goods," and goods are defined as "things which are movable at the time of identification to the contract for sale." Mo. Rev. Stat. §§ 400.2-104(1), 400.2-105(1).

The undisputed facts establish J.E. Dunn was not a merchant and did not sell the door at issue. Without evidence J.E. Dunn was a merchant, there can be no implied warranty of merchantability. *See Herbert v. Harl*, 757 S.W.2d 585, 588 (Mo. banc 1988). Accordingly, summary judgment is entered in J.E. Dunn's favor with regard to Jessie Cobbins's breach of implied warranty of merchantability claim.[2]

### (2) Breach of Implied Warranty of Fitness for a Particular Purpose

An implied warranty of fitness for a particular purpose is found in Missouri statute:

> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods there is unless excluded or modified under section 400.2-316 an implied warranty that the goods shall be fit for such a purpose.

Mo. Rev. Stat. § 400.2-315. To recover for breach of implied warranty of fitness for a particular purpose, a plaintiff must establish the good was "not simply defective, but rather defective as to a particular purpose," and he or she "was injured by the defective nature of the goods." *Coop. Power Ass'n v. Westinghouse Elec. Corp.*, 60 F.3d 1336, 1345 (8th Cir. 1995) (citation omitted); *Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 130 (Mo. banc 2010) (citation omitted).

The undisputed facts establish J.E. Dunn did not sell the door. In addition, there is no evidence the door was defective as to a particular purpose. And Jessie Cobbins

---

[2] Further, Jessie Cobbins, by failing to answer J.E. Dunn's requests for admission, admitted she could not provide a factual basis for her allegation that J.E. Dunn's actions or inactions caused her injuries. Plaintiff's failure to provide evidence establishing J.E. Dunn caused her injuries is also fatal to her claim. *Ragland Mills*, 763 S.W.2d at 360.

5

has admitted that she cannot provide a factual basis establishing her allegation that J.E. Dunn's actions or inactions caused her injuries. For these reasons, summary judgment is entered in J.E. Dunn's favor with regard to Jessie Cobbins's claim of breach of implied warranty of fitness for a particular purpose.

### (3) Product Liability

Missouri adopted section 402A of the Second Restatement of Torts as its product liability jurisprudence. *See Ford v. GACS, Inc.*, 265 F.3d 670, 680 (8th Cir. 2001). "The common thread among Missouri products liability cases is that an entity must have plac[ed] a defective product in the stream of commerce." *Id.* (citations and internal quotations omitted). But there is no cause of action for product liability against general contractors. *See Chubb Grp. of Ins. Cos. v. C.F. Murphy & Assocs., Inc.*, 656 S.W.2d 766, 780-81 (Mo. Ct. App. 1983) (finding the plaintiffs had no product liability cause of action against a general contractor). Because the undisputed facts establish J.E. Dunn was a general contractor, Jessie Cobbins's claim against J.E. Dunn for product liability fails. Doc. #97, at 2-3; Doc. #97-1, at 1. Thus, summary judgment is entered in J.E. Dunn's favor with regard to Jessie Cobbins's product liability claim.

### (4) Negligence

Jessie Cobbins alleges J.E. Dunn failed to (1) warn of the danger of the tempered glass shattering, (2) take steps to warn her that the tempered glass door was subject to spontaneous shattering, (3) provide information to her about ways to protect herself from injury, (4) failed to take steps to further stabilize, strengthen, or modify the door. Doc. #29, ¶ 25. Although she made these allegations, Jessie Cobbins, by failing to respond to J.E. Dunn's requests for admissions, admitted she could not provide a factual basis for her allegation that J.E. Dunn owed a duty to warn her or that J.E. Dunn breached its duty to warn her. Doc. #97-11, at 4-5. Further, Jessie Cobbins admitted she did not know what warning J.E. Dunn was required to provide, and she could not identify what steps J.E. Dunn should have taken to stabilize, strengthen, or modify the door. Doc. #97, at 7; Doc. #97-9; Doc. #97-10; Doc. #97-11, at 3. Due to her

6

admissions, there is no evidence to support Jessie Cobbins's negligence claim against J.E. Dunn.

Additionally, Jessie Cobbins admitted she could not provide a factual basis for her allegation that J.E. Dunn's actions or inactions caused her injuries. Doc. #97-11, at 5. Without a causal connection between the J.E. Dunn's actions or inactions and the resulting injury to Jessie Cobbins, there is no actionable claim for negligence. *Oldaker v. Peters*, 869 S.W.2d 94, 100 (Mo. Ct. App. 1993) (citation omitted). For these reasons, the Court enters summary judgment in J.E. Dunn's favor on Jessie Cobbins's negligence claim.

### (5) Loss of Consortium

Jessie Cobbins's husband, Robert Cobbins, alleged a loss of consortium claim against J.E. Dunn. Doc. #29. "[P]laintiff's right to recover for loss of consortium is derivative only, so that if the spouse has no valid claim for personal injuries, plaintiff cannot recover damages" for loss of consortium. *Teschner v. Physicians Radiology*, 761 S.W.2d 665, 667 (Mo. Ct. App. 1988) (citation omitted). Because Jessie Cobbins's claims against J.E. Dunn have failed, Robert Cobbins cannot recover damages for loss of consortium, which are derivative of his wife's claims. *Id.* Moreover, Robert Cobbins admitted, when he failed to respond to J.E. Dunn's requests for admissions, he could not provide a factual basis to support his allegation that J.E. Dunn's actions or inactions caused his injuries. Doc. #97-12, at 5. Accordingly, the Court grants summary judgment in J.E. Dunn's favor on Robert Cobbins's loss of consortium claim.

### B. Cimmaron Electric

Plaintiffs allege the same claims against Cimmaron Electric. Similar to J.E. Dunn, Cimmaron Electric served requests for admissions on Plaintiffs. Docs. #95-1, 95-2, 95-3, 95-4. Plaintiffs never answered the requests for admission, and therefore, the matters contained therein are deemed admitted. Doc. #95, at 2, ¶ 5; Fed. R. Civ. P. 36(a)(3). Consequently, Plaintiffs admitted they had no factual basis for their allegations that Cimmaron Electric owed a duty to warn them about the door, Cimmaron Electric breached its alleged duty to warn them, Cimmaron Electric should have warned

7

individuals to protect themselves from the tempered glass shattering, and Cimmaron Electric should have taken steps to further strengthen or modify the door. Doc. #95-3, at 1-2; Doc. #95-4, at 1-2. Plaintiffs also admitted they had no factual basis for their allegation that Cimmaron Electric's actions or inactions caused their injuries. Doc. #95-3, at 3; Doc. #95-4, at 3.

Further, because Plaintiffs failed to respond to the facts set forth by Cimmaron Electric in support of its summary judgment motion, those facts are deemed admitted for purposes of summary judgment. L.R. 56.1. Thus, the following facts are admitted: Cimmaron Electric did not have a contract with J.E. Dunn, Insulite Glass, Bratton, or Skyline Design with regard to the door; Cimmaron Electric was not involved in ordering or purchasing of the door; Cimmaron Electric was not involved in manufacturing the door; Cimmaron Electric was not involved in the sale of the door; and Cimmaron Electric was not involved in fabricating, drilling, or installing the door, or directing any part of the installation process. Doc. #95, at 3-4, ¶¶ 14-22; Doc. #95-5.

### (1) Breach of Implied Warranty of Merchantability

To establish a breach of implied warranty of merchantability claim, a party must prove (1) a merchant sold goods, (2) which were not "merchantable" at the time of the sale, (3) injury and damages to the buyer, (4) which were caused proximately or in fact by the defective nature of the goods, and (5) notice to the seller of the injury. *Ragland Mills*, 763 S.W.2d at 360 (citation omitted); *see also* Mo. Rev. Stat. § 400.2-314. The undisputed facts establish Cimmaron Electric did not sell, manufacture, or fabricate the door at issue. Without evidence Cimmaron Electric was a merchant, there can be no claim for breach of implied warranty of merchantability. *See Herbert*, 757 S.W.2d at 588. Additionally, Jessie Cobbins admitted she had no factual basis to support her claim that Cimmaron Electric's actions or inactions caused her injuries. Doc. #95-3. This admission prevents her from establishing a breach of implied warranty of merchantability claim against Cimmaron Electric because she cannot establish causation. *Id.* Therefore, the Court enters summary judgment in Cimmaron Electric's favor with regard to Jessie Cobbins's claim of breach of implied warranty of merchantability.

8

### (2) Breach of Implied Warranty of Fitness for a Particular Purpose

To recover for breach of implied warranty of fitness for a particular purpose, a plaintiff must establish the seller at the time of contracting had reason to know a particular purpose for which the good was required, the good was defective as to that particular purpose, and the plaintiff was injured by the defective nature of the goods. Mo. Rev. Stat. § 400.2-315; *Coop. Power Ass'n*, 60 F.3d at 1345; *Renaissance Leasing, LLC*, 322 S.W.3d at 130. The undisputed facts establish Cimmaron Electric was not the seller of the door. Further, there is no evidence showing the door was defective as to a particular purpose or Jessie Cobbins was injured by the defective nature of the door. Accordingly, summary judgment is entered in Cimmaron Electric's favor with regard to Jessie Cobbins's claim of breach of implied warranty of fitness for a particular purpose.

### (3) Product Liability

To recover under a theory of strict liability in tort for defective design, a plaintiff must establish (1) the defendant sold the product in the course of its business; (2) the product was then in a defective condition unreasonably dangerous when put to a reasonably anticipated use; (3) the product was used in a manner reasonably anticipated; and (4) the plaintiff was damaged as a direct result of the defective condition that existed when the product was sold. *Linegar v. Armour of Am., Inc.*, 909 F.2d 1150, 1152-53 (8th Cir. 1990) (citations omitted). The undisputed evidence establishes Cimmaron Electric did not sell the door at issue. Further, Jessie Cobbins admitted she cannot establish her injuries were caused by Cimmaron Electric's actions or inactions. Because she cannot establish Cimmaron Electric sold the door or the door caused her injuries, Jessie Cobbins cannot establish a product liability claim against Cimmaron Electric. The Court enters summary judgment in favor of Cimmaron Electric with regard to Jessie Cobbins' product liability claim.

### (4) Negligence

Jessie Cobbins alleges Cimmaron Electric failed to (1) warn of the danger of the tempered glass shattering, (2) take steps to warn her that the tempered glass door was subject to spontaneous shattering, (3) provide information to her about ways to protect herself from injury, and (4) failed to take steps to further stabilize, strengthen, or modify the door. Doc. #29, ¶ 25. Nevertheless, Jessie Cobbins, by failing to answer Cimmaron Electric's requests for admissions, admitted she could not provide a factual basis for her allegation that Cimmaron Electric owed a duty to warn her or that Cimmaron Electric breached its duty to warn her. Doc. #95-3, at 2. She also admitted she could not provide any factual basis to support her allegations that Cimmaron Electric should have taken steps to provide users with information about how to protect themselves from injury, and Cimmaron Electric should have taken steps to further stabilize, strengthen, or modify the door. *Id.*, at 1-2. Furthermore, Jessie Cobbins admitted she could provide no factual basis for her claim that Cimmaron Electric's actions or inactions caused her injuries. *Id.*, at 3. Without a causal connection between the conduct of the defendant and the resulting injury to the plaintiff, there is no actionable claim for negligence. *Oldaker*, 869 S.W.2d at 100 (citation omitted). For these reasons, the Court enters summary judgment in Cimmaron Electric's favor with regard to Jessie Cobbins's negligence claim.

### (5) Loss of Consortium

Jessie Cobbins's husband, Robert Cobbins, set forth a claim of loss of consortium against Cimmaron Electric. Doc. #29. His right to recover for loss of consortium is derivative only. If his spouse "has no valid claim for personal injuries, [he] cannot recover damages" for loss of consortium. *Teschner*, 761 S.W.2d at 667 (citation omitted). Because Jessie Cobbins's claims against Cimmaron Electric have failed, Robert Cobbins cannot recover damages for loss of consortium, which are derivative of his wife's claims. Moreover, Robert Cobbins admitted, when he failed to respond to Cimmaron Electric's requests for admissions, he could not provide a factual basis for his claim that Cimmaron Electric's actions or inactions caused his injuries. Doc. #95-4. For

10

these reasons, the Court grants summary judgment in Cimmaron Electric's favor on Robert Cobbins's loss of consortium claim.

### C. Skyline

Plaintiffs failed to respond to Skyline's statement of facts set forth in support of its motion for summary judgment. Therefore, those facts set forth by Skyline that are supported by the record are deemed admitted for purposes of summary judgment. L.R. 56.1. Skyline is a company that applies a unique process of etching that, when applied to highly tempered glass, produces designs, illustrations, or patterns on the glass's surface. Doc. #99, at 2; Doc. #99-1, at 1. Skyline does not manufacture, glaze, or temper glass. Doc. #99, at 2; Doc. 99-1, at 1. Skyline receives glass from other sources and etches the glass. Doc. #99, at 2; Doc. #99-1, at 2.

Skyline's contract with regard to the glass door at the Bolling Building was to etch a custom design on highly tempered glass that was manufactured and provided by Oldcastle Building Envelope ("Oldcastle"). Doc. #99, at 2; Doc. #99-1, at 2. The architect and customer provided specific dimensions to Skyline for the etchings. Doc. #99, at 4; Doc. #99-1, at 3. Skyline received the highly tempered glass from Oldcastle, provided its etching and artistic services to decorate the glass, and shipped the etched glass at the direction of Bratton, also a defendant in this matter, in 2006. Doc. #99, at 3; Doc. #99-1, at 2. At the time the glass shipped from Skyline to Bratton in 2006, the glass did not have a known defect. Doc. #99, at 3; Doc. #99-1, at 2. Skyline did not have control of the glass after it was shipped to Bratton. Doc. #99, at 3; Doc. #99-1, at 2. At the time the glass was shipped from Skyline to Bratton, the glass was not ready to be installed in the Bolling Building. Doc. #99, at 3-4; Doc. #99-1, at 2. Skyline did not fit or install the glass or the glass door in the Bolling Building. Doc. #99, at 3-4; Doc. #99-1, at 2.

With regard to the incident in April 2013, Jessie Cobbins testified the door shattered when she was walking away from it, her back was to the door when it shattered, and she could not see where the shattering began. Doc. #99, at 4; Doc. #99-3, at 8, 10. Plaintiff has never met or talked with anyone at Skyline. Doc. #99, at 4; Doc. #99-3, at 12. As set forth above, Plaintiffs, by failing to answer requests for

11

admission, admitted they could not identify any fabrication, manufacturing, or installation defect that caused the door to be defective. Doc. #97-11, at 3; Doc. #97-12, at 3. Skyline argues it is entitled to summary judgment on Jessie Cobbins's claims because the doctrine of acceptance bars the claims, she lacks standing to bring warranty claims, she cannot prove a product liability claim, and she cannot prove a negligence claim.

### (1) Doctrine of Acceptance

Skyline argues the doctrine of acceptance affirmative defense precludes a finding of liability against it. "The acceptance doctrine relieves contractors of liability towards third parties who are not a party to the contract after the owner has accepted the contractor's work." *Rogers v. Frank C. Mitchell Co.*, 908 S.W.2d 387, 388 (Mo. Ct. App. 1995) (citations omitted). Skyline contends the "final designs and samples of the glass were accepted by the architect and a representative of J.E. Dunn." Doc. #99, at 7-8. However, Skyline did not include these facts in its statement of facts and failed to set forth evidence to support this argument. Doc. #99, at 1-4. Without facts and evidence to support Skyline's argument that the doctrine of acceptance bars Plaintiffs' claims, the Court cannot consider this argument. Thus, Skyline's motion for summary judgment in its favor on the affirmative defense of doctrine of acceptance is denied.

### (2) Breach of Implied Warranties

Skyline argues it is entitled to summary judgment because the Uniform Commercial Code (U.C.C.) does not apply to service contracts, and therefore, Jessie Cobbins cannot maintain breach of implied warranty claims under Missouri's codification of the U.C.C. "[If] the contract is a contract for services, the U.C.C. does not apply." *Jones v. Galaxy 1 Mktg., Inc.*, 478 S.W.3d 556, 571 (Mo. Ct. App. 2015) (citation omitted). The "dominant element test" is applied to determine the nature of the contract. *Mo. Farmers Ass'n v. McBee*, 787 S.W.2d 756, 760-61 (Mo. Ct. App. 1990) (citation omitted) (finding a contract for the spraying of crops was a service contract, and concluding "implied warranties do not apply to service contracts."). The Court must consider whether the contract's predominant purpose is the rendition of services, with

12

Case 4:15-cv-00031-ODS   Document 103   Filed 10/28/16   Page 12 of 17

goods incidentally involved, or the contract is a transaction for sale, with services incidentally involved. *Id.* at 760.

It is undisputed that Skyline's contract was for etching of a custom design on highly tempered glass. Doc. #99, at 2; Doc. #99-1, at 2. It is also undisputed that Skyline did not manufacture the tempered glass; it was provided by another company. Doc. #99, at 3; Doc. #99-1, at 2. Applying the test to the present facts, it appears the dominant element of Skyline's contract was service. Accordingly, the U.C.C. does not apply, and Jessie Cobbins cannot recover for breach of implied warranties. *Mo. Farmers Ass'n*, 787 S.W.2d at 760. Additionally, Jessie Cobbins has failed to establish how she could otherwise bring claims for breach of implied warranties against Skyline, which only etched the glass and shipped it to Bratton and did not install, modify, or maintain the glass in question. Therefore, the Court enters summary judgment in Skyline's favor on Jessie Cobbins's claims of breach of implied warranty of merchantability and breach of implied warranty of fitness for a particular purpose.

### (3) Product Liability

To recover under a theory of strict liability in tort for defective design, a plaintiff must establish (1) the defendant sold the product in the course of its business; (2) the product was then in a defective condition unreasonably dangerous when put to a reasonably anticipated use; (3) the product was used in a manner reasonably anticipated; and (4) the plaintiff was damaged as a direct result of the defective condition that existed when the product was sold. *Linegar v. Armour of Am., Inc.*, 909 F.2d 1150, 1152-53 (8th Cir. 1990) (citations omitted). "A supplier is not liable unless the product is defective at the time it leaves the supplier's control and enters the stream of commerce." *Sperry v. Bauermeister, Inc.*, 4 F.3d 596, 598 (8th Cir. 1993) (citing *Lewis v. Envirotech*, 674 S.W.2d 105, 110 (Mo. Ct. App. 1984)).

The undisputed evidence establishes Skyline only etched the design on the glass portion of the door, and it did not manufacture or sell the door at issue. Doc. #99, at 2-3; Doc. #99-1, at 2. It is also undisputed that when Skyline shipped the glass in 2006 to Bratton, the glass did not have a known defect. Doc. #99, at 3; Doc. #99-1, at 2. And once the glass was shipped from Skyline to Bratton, it is undisputed that Skyline no

13

longer had control over the glass. Doc. #99, at 3; Doc. #99-1, at 2. For these reasons, Jessie Cobbins cannot establish a product liability claim against Skyline. The Court enters summary judgment in favor of Skyline with regard to Jessie Cobbins' product liability claim.

### (4) Negligence

Jessie Cobbins alleges Skyline failed to (1) warn of the danger of the tempered glass shattering, (2) take steps to warn her that the tempered glass door was subject to spontaneous shattering, (3) provide information to her about ways to protect herself from injury, (4) failed to take steps to further stabilize, strengthen, or modify the door. Doc. #29, ¶ 25. Because there is no evidence establishing Skyline had any control over the glass or the door after it was shipped from Skyline in 2006, Jessie Cobbins cannot establish a claim of negligence against Skyline for failing to take steps to stabilize, strengthen or modify the door. She is left with a negligent failure to warn claim against Skyline.

A negligent failure to warn claim "focuses on what the manufacturer knew rather than on the product." *Moore v. Ford Motor Co.*, 332 S.W.3d 749, 764 (Mo. banc 2011). To establish a negligent failure to warn claim, a plaintiff must establish (1) the defendant designed the product; (2) the product did not contain an adequate warning of the alleged defect or hazard; (3) the defendant failed to use ordinary care to warn of the risk of harm from the alleged defect or hazard; and (4) as a direct result of the defendant's failure to adequately warn, the plaintiff was injured. *Id.* (citation omitted).

It is undisputed that Skyline did not manufacture the glass at issue. It was manufactured and provided by another company. Doc. #99, at 2; Doc. #99-1, at 2. It is also undisputed that the dimensions for Skyline's work were provided by the architect and customer. Doc. #99, at 4; Doc. #99-1, at 3. After rendering its etching services, Skyline shipped the glass at Bratton's direction in 2006, and thereafter, had no control over the glass. Doc. #99, at 3; Doc. #99-1, at 2. Finally, it is undisputed that when Skyline shipped the glass, there was no known defect. Doc. #99, at 3; Doc. #99-1, at 2. These undisputed facts prevent Jessie Cobbins from establishing a negligent failure to

14

warn claim against Skyline. *Moore*, 332 S.W.3d at 764. Therefore, the Court enters summary judgment in Skyline's favor on Jessie Cobbins's negligence claim.

(5) Loss of Consortium

Skyline did not seek summary judgment on Robert Cobbins's loss of consortium claim. Doc. #99. However, Robert Cobbins's right to recover for loss of consortium is derivative. If his spouse "has no valid claim for personal injuries, [he] cannot recover damages" for loss of consortium. *Teschner*, 761 S.W.2d at 667 (citation omitted). Because Jessie Cobbins's claims against Skyline have failed, Robert Cobbins cannot recover damages for loss of consortium, which are derivative of his wife's claims. The Court finds Robert Cobbins cannot prevail on such a claim against Skyline, and dismisses this claim against Skyline *sua sponte*. *See Bucklew v. Lombardi*, 783 F.3d 1120, 1127 (8th Cir. 2015) (citation omitted) (stating the court has the power to dismiss a complaint *sua sponte* if the plaintiff cannot prevail and amendment would be futile); *Murphy v. Lancaster*, 960 F.2d 746, 748 (8th Cir. 1992) (stating a court's *sua sponte* dismissal does not require prior notice if it is "patently obvious the plaintiff could not prevail based on the facts alleged in the complaint.") (citation omitted).

**D. Bratton**

Plaintiffs failed to respond to Bratton's statement of facts, and therefore, the facts set forth by Bratton that are supported by the record are deemed admitted for purposes of summary judgment. L.R. 56.1. J.E. Dunn retained Bratton to perform services for the renovation of the Bolling Building. Doc. #101, at 6; Doc. #101-1, at 1. Bratton did not fabricate or manufacture the subject door. Doc. #101, at 6; Doc. #101-1, at 2. Bratton purchased some of the fabricated doors from a third party. Doc. #101, at 6; Doc. #101-1, at 2. In May 2006, the GSA accepted the renovations to the fourteenth floor of the Bolling Building as substantially complete. Doc. #101, at 6; Doc. #101-2. In April 2013, Jessie Cobbins was injured while opening a glass door on the fourteenth floor of the Bolling Building. Doc. #29. She testified she never saw any Bratton employee on the fourteenth floor of the Bolling Building, and she had no knowledge as to whether Bratton manufactured, installed, or repaired the door at issue. Doc. #101, at

9; Doc. #101-8. Further, Plaintiffs, by failing to answer requests for admission, admitted they could not identify any fabrication, manufacturing, or installation defect that caused the door to be defective. Doc. #97-11, at 3; Doc. #97-12, at 3; Doc. #101, at 8; Doc. #101-7; Fed. R. Civ. P. 36(a)(3). Bratton contends it is entitled to summary judgment on all claims asserted by Plaintiffs.

### (1) Claims Alleged by Jessie Cobbins

Bratton argues Jessie Cobbins failed to present a submissible case of causation, which is required for her breach of warranty claims, product liability claim, and negligence claim. "Under Missouri law, to prevail on a claim of strict liability, negligence, or breach of warranty, [the plaintiff] must prove that his use of the [product or good] directly caused or contributed to some or all of his injuries." *Bone v. Ames Taping Tool Sys., Inc.*, 179 F.3d 1080, 1081-82 (8th Cir. 1999) (citations omitted). Here, the undisputed facts do not establish Bratton caused or contributed to Jessie Cobbins's injuries. Instead, the evidence establishes that Bratton did not fabricate or manufacture the door. Doc. #101, at 6; Doc. #101-1, at 2. Further, Jessie Cobbins admitted she had no knowledge as to whether Bratton installed or repaired the door at issue. Doc. #101, at 9; Doc. #101-8. And she admitted she could not identify any fabrication, manufacturing, or installation defect that caused the door to be defective. Doc. #97-11, at 3; Doc. #97-12, at 3; Doc. #101, at 8; Doc. #101-7. Without evidence of Bratton's actions or inactions causing Jessie Cobbins's injury, she cannot establish any of her claims against Bratton. Accordingly, the Court enters summary judgment in Bratton's favor with regard to Jessie Cobbins's implied warranty claims, negligence claim, and product liability claim.

### (2) Claim Alleged by Robert Cobbins

Jessie Cobbins's husband, Robert Cobbins, alleged a claim of loss of consortium against Bratton. Doc. #29. His right to recover for loss of consortium is derivative only. If his spouse "has no valid claim for personal injuries, [he] cannot recover damages" for loss of consortium. *Teschner*, 761 S.W.2d at 667 (citation omitted). Because Jessie Cobbins's claims against Bratton have failed, Robert Cobbins cannot recover damages

for loss of consortium, which are derivative of his wife's claims. The Court grants summary judgment in Bratton's favor on Robert Cobbins's loss of consortium claim.

## IV. CONCLUSION

For the foregoing reasons, J.E. Dunn's motion for summary judgment is granted, Cimmaron Electric's motion for summary judgment is granted, Skyline's motion for summary judgment is granted in part and denied in part, and Bratton's motion for summary judgment is granted. Additionally, Robert Cobbins's loss of consortium claim against Skyline is dismissed.

IT IS SO ORDERED.

DATE: October 28, 2016

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT